Scott M. Lilja (4231)
Fabian VanCott
slilja@fabianvancott.com
215 S. State Street, Suite 1200
Salt Lake City, UT 84111
Telephone: (810) 531-8900
Facsimile: (801)-596-2814
*Attorneys for Plaintiff Torus National*
*Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TORUS NATIONAL INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>MONAVIE, INC., DALLIN LARSEN, HENRY MARSH, RANDY LARSEN, and KELLY JESSOP, individually and on behalf of all others similarly situated,<br><br>    Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>Case No.<br><br>Judge: |

NOW COMES the Plaintiff, Torus National Insurance Company ("Torus"), by and through its counsel, and for its Complaint for Declaratory Judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, against the Defendants, MonaVie, Inc. ("MonaVie"), Dallin Larsen ("D. Larsen"), Randy Larsen ("R. Larsen"), Henry Marsh ("Marsh"), and Kelly Jessop ("Jessop"), alleges as follows:

### NATURE OF THE ACTION

1.      In this action, Torus seeks a declaration that it has no duty to defend or indemnify D. Larsen, R. Larsen, and Marsh (collectively, the "Individual Defendants"), under a Management Liability and Privacy & Network Security Insurance Policy – For Private Companies ("Policy") issued by Torus to MonaVie, with respect to a class action lawsuit

captioned *Kelly Jessop v. Dallin Larsen, Henry Marsh, Randy Larsen, Machiel Kennedy, Ralph Carson, Amy Cowley, Mark Rawlins, Porter Hall, Stephen J. Hall, Does 1–10, and Bankers Trust Company*, and currently pending in the United States District Court for the District of Utah, Case No. 14-cv-00916-BSJ (the "Underlying Lawsuit").

2.      The Underlying Lawsuit arises out of a 2010 transaction wherein an Employee Stock Ownership Plan ("ESOP") sponsored by MonaVie allegedly purchased shares of MonaVie common stock from MonaVie's principal shareholders and/or entities controlled by them for a grossly inflated amount. The transaction was allegedly financed through a loan by MonaVie to the ESOP for the entire purchase price at more than twice the going interest rate at that time.

3.      The Underlying Lawsuit contends that, in causing MonaVie to carry out the transaction, Bankers Trust Company ("Bankers Trust"), the trustee of the ESOP, breached its fiduciary duties to the ESOP in violation of The Employee Retirement Income Security Act of 1974 ("ERISA"). The Underlying Lawsuit alleges that the Individual Defendants, through their roles as officers, directors and shareholders of MonaVie, knew that MonaVie was in dire financial condition and that its stock held very little value, yet caused MonaVie to carry out the transaction and knowingly participated in Bankers Trust's violations of ERISA.

4.      Coverage under the Policy is limited to three specific categories of conduct: (1) breach of any of the responsibilities, obligations or duties imposed upon Sponsored Plan fiduciaries by ERISA; (2) a negligent act, error or omission in the Administration of any Plan committed or attempted by any Insured, or (3) any other matter alleged against the Insured solely by reason of such Insured's service as a Sponsored Plan fiduciary.

5.      The Underlying Lawsuit does not seek to hold the Individual Defendants liable in their capacity as fiduciaries of the ESOP, which is a Sponsored Plan as defined by the Policy, or

for their Administration of the ESOP. Rather, the Underlying Lawsuit seeks to hold the Individual Defendants liable because, despite their knowledge of the true value of MonaVie's stock, they caused MonaVie to carry out the transaction and participated in Bankers Trust's breaches of fiduciary duty.

6.      Torus also seeks a declaration that it has no duty to defend or indemnify MonaVie with respect to the third-party complaint filed in the Underlying Lawsuit by Bankers Trust ("Bankers Trust Complaint").

7.      The Bankers Trust Complaint seeks damages as a result of MonaVie's alleged failure to pay administrative costs and legal fees incurred by Bankers Trust in its administration of the ESOP. The Bankers Trust Complaint also seeks equitable contribution from MonaVie to the extent that Bankers Trust is found liable in the Underlying Lawsuit. Bankers Trust contends that MonaVie's extension of credit to the ESOP for the 2010 transaction constituted a separate violation of ERISA that caused damage to the plaintiffs in the Underlying Lawsuit. Bankers Trust also contends that MonaVie knowingly participated in Bankers Trust's breaches of its fiduciary duties to the ESOP.

8.      The Bankers Trust Complaint does not seek to hold MonaVie liable in its capacity as a fiduciary of the ESOP or for the Administration of the ESOP.

9.      Accordingly, Torus has no duty to defend or indemnify MonaVie or the Individual Defendants against the Bankers Trust Complaint and Underlying Lawsuit, respectively.

### THE PARTIES

10.     Torus is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Jersey City, New Jersey.

3

11.     MonaVie is a corporation organized and existing under the laws of the State of Utah with its principal place of business in South Jordan, Utah.

12.     On information and belief, D. Larsen is a citizen of Florida and Utah.

13.     On information and belief, R. Larsen is a citizen of Nevada.

14.     On information and belief, Marsh is a citizen of Utah.

15.     On information and belief, Jessop is a citizen of Utah.

## STATEMENT OF JURISDICTION AND VENUE

16.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Torus and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to this litigation occurred in this judicial district.

18.     An actual controversy exists between Torus and the Defendants regarding the existence of coverage under an insurance policy that Torus issued to MonaVie.

## FACTUAL BACKGROUND

*The Underlying Lawsuit*

19.     On December 18, 2014, Jessop filed the Underlying Lawsuit. A copy of the Underlying Lawsuit is attached as Exhibit A.

20.     MonaVie was not a named defendant in the Underlying Lawsuit.

21.     The only defendants remaining in the Underlying Lawsuit are D. Larsen, R. Larsen, and Marsh.

22.     The Underlying Lawsuit is brought on behalf of all persons who were participants

in the ESOP or beneficiaries of ESOP participants on February 1, 2008 or any time thereafter.[1]

Exhibit A, at ¶ 64.

23.     The Underlying Lawsuit alleges that Jessop was a corporate trainer employed by MonaVie and is vested in the ESOP. *Id*. at ¶ 1.

24.     The Underlying Lawsuit alleges that MonaVie is the Sponsor of the ESOP within the meaning of ERISA § 3(16)(b). MonaVie allegedly adopted the ESOP effective on or about January 2, 2010. *Id*. at ¶ 48.

25.     The Underlying Lawsuit alleges that the Individual Defendants are current and former officers and directors of MonaVie. The Underlying Lawsuit alleges that as officers and principal shareholders of MonaVie, the Individual Defendants are "parties in interest" as defined in ERISA § 3(14). *Id*. at ¶¶ 14-17.

26.     The Underlying Lawsuit alleges that MonaVie appointed Bankers Trust as trustee of the ESOP in 2010, and that at all relevant times, Bankers Trust was a "fiduciary" as defined by ERISA because of its role as trustee of the ESOP. The Underlying Lawsuit alleges that Bankers Trust had the exclusive authority to manage and control the assets of the ESOP. *Id*. at ¶¶ 13, 50.

27.     The Underlying Lawsuit alleges that on November 17, 2010, Bankers Trust, in its capacity as trustee, caused the ESOP to purchase an unknown percentage of the common stock of MonaVie from MonaVie's principal shareholders and/or the entities controlled by them for approximately $186 million (the "ESOP Transaction"). *Id*. at ¶¶ 2, 48.

28.     The Underlying Lawsuit alleges that MonaVie and the selling shareholders could not obtain or knew that they could not secure bank financing for such a loan to the ESOP because the collateral for the loan would be near worthless MonaVie stock. In order to finance

---

[1] The class was certified on December 1, 2015.

the transaction, the ESOP and MonaVie allegedly entered into a loan agreement, with Bankers Trust's cooperation, wherein MonaVie funded the $186 million purchase price, payable over 15 years at an interest rate of 10% per annum. The Underlying Lawsuit alleges that this interest rate was more than twice the 4.25% rate for similar financing. *Id*. at ¶¶ 3, 51.

29.     The Underlying Lawsuit alleges that within 45 days of the ESOP Transaction, the MonaVie stock purchased by the ESOP lost over $62 million in value, and as of January 2014, ESOP's MonaVie shares were allegedly worth $773,000. *Id*. at ¶¶ 58, 61.

30.     The Underlying Lawsuit alleges that Bankers Trust failed to conduct adequate due diligence with respect to the ESOP Transaction, caused the ESOP to pay substantially more than the fair market value for MonaVie's stock, and breached its fiduciary duties to the ESOP. The Underlying Lawsuit asserts claims against Bankers Trust for breach of fiduciary duty under ERISA and for engaging in a prohibited transaction as defined by ERISA. *Id*. at ¶¶ 73-79.

31.      The Underlying Lawsuit alleges that as parties in interest, the Individual Defendants may be liable under ERISA for their knowing participation in a fiduciary's violations of ERISA. *Id*. at ¶ 92.

32.     The Underlying Lawsuit alleges that the Individual Defendants knew of and participated in Bankers Trust's violations of ERISA, and specifically, that each of the Individual Defendants knew before and at the time of the ESOP Transaction that MonaVie was in a dire financial condition. The Underlying Lawsuit alleges that despite their knowledge that MonaVie was essentially insolvent and worthless, the Individual Defendants hired Bankers Trust to represent the ESOP in the ESOP Transaction, and knowingly participated in Bankers Trust's violations of ERISA. *Id*. at ¶¶ 94-95.

33.     The Underlying Lawsuit further alleges that the Individual Defendants made

millions of dollars from the ESOP Transaction. *Id*. at ¶ 96.

34.     The lawsuit seeks to enjoin the Individual Defendants from taking any actions with respect to the ESOP, order that the Individual Defendants disgorge to the ESOP and/or any successor trust(s) the monies received by them in connection with the ESOP Transaction and any profits they made through the use of such monies, order that the Individual Defendants provide other appropriate equitable relief to the ESOP, including an accounting of their profits and the imposition of a constructive trust and/or equitable lien on any funds wrongfully held by the Individual Defendants, a declaration that any indemnification agreement between the Individual Defendants and MonaVie or the ESOP violates ERISA § 410, and attorneys' fees and costs.

*The Bankers Trust Complaint*

35.     On April 21, 2015, Bankers Trust filed the Bankers Trust Complaint against MonaVie asserting claims for breach of contract and equitable contribution. A copy of the Bankers Trust Complaint is attached as Exhibit B.

36.     The Bankers Trust Complaint alleges that on September 12, 2010, MonaVie and Bankers Trust entered into an Engagement Agreement whereby MonaVie appointed Bankers Trust to serve at the discretionary trustee for the ESOP Transaction. The Engagement Agreement was amended twice. Exhibit B, at ¶¶ 10-11.

37.     Bankers Trust alleges that the Second Amendment to the Engagement Agreement contained an indemnification provision wherein MonaVie agreed to indemnify Bankers Trust with respect to, among other things, any legal proceedings related to the performance of services by Bankers Trust pursuant to the Agreement. *Id*. at ¶¶ 13-14.

38.     MonaVie and Bankers Trust also allegedly entered into the MonaVie, Inc. Employee Stock Ownership Plan Trust Agreement, dated November 17, 2010, which

purportedly superseded the Engagement Agreement's provisions, other than the indemnification provisions. *Id*. at ¶¶ 16-17.

39.     The Bankers Trust Complaint alleges that Bankers Trust has incurred administrative costs and other legal fees relating to an investigation by the United States Department of Labor into the ESOP. Bankers Trust alleges that MonaVie initially agreed to and did reimburse these legal fees and costs under its indemnity obligations until the end of 2014, but has failed and/or refused to continue its reimbursement of such fees. *Id*. at ¶¶ 18-19.

40.     Bankers Trust alleges that MonaVie has also failed to reimburse it for its attorneys' fees and costs in connection with the Underlying Lawsuit despite Bankers Trust's request to MonaVie to do so. *Id*. at ¶¶ 22-23.

41.     The Bankers Trust Complaint further alleges that MonaVie is a "party in interest" as defined by ERISA § 3(14) with respect to the ESOP. *Id*. at ¶ 26.

42.     The Bankers Trust Complaint alleges that MonaVie issued a note in the amount of $186,496,985 by which MonaVie extended credit to the ESOP for the purchase price for the ESOP's acquisition of MonaVie stock in the ESOP Transaction. *Id*. at ¶ 27.

43.     The Bankers Trust Complaint alleges that MonaVie's extension of credit to the ESOP constitutes a separate and independent violation of ERISA, and therefore, if Bankers Trust is found liable in the Underlying Lawsuit for breach of fiduciary duties, then Bankers Trust is entitled to contribution from MonaVie for any damages arising from MonaVie's separate violation of ERISA. *Id*. at ¶ 70.

44.     The Bankers Trust Complaint further contends that MonaVie knowingly participated in the ESOP Transaction, and therefore, if Bankers Trust is found liable in the Underlying Lawsuit for breach of its fiduciary duties, Bankers Trust is entitled to contribution

from MonaVie for any damages resulting from MonaVie's knowing participation in the ESOP Transaction and knowing participation in Bankers Trust's breaches of its fiduciary duties. *Id*. at ¶¶ 71-72.

45.     The Bankers Trust Complaint asserts claims for breach of contract and indemnification, breach of the covenant of good faith and fair dealing, and declaratory judgment as a result of MonaVie's failure to indemnify Bankers Trust for administrative fees and expenses and fees and expenses Bankers Trust has incurred with respect to governmental investigations and the Underlying Lawsuit pursuant to Engagement Agreement.

46.     The Bankers Trust Complaint also asserts a claim for equitable contribution as a result of MonaVie's own ERISA violation and its knowing participation in the ESOP Transaction.

47.     The Bankers Trust Complaint seeks damages, indemnification and reimbursement of attorneys' fees, costs and litigation expenses with respect to the Underlying Lawsuit, and equitable contribution.

## THE TORUS POLICY

48.     Torus issued a Management Liability and Privacy & Network Security Insurance Policy – For Private Companies bearing policy number 44363C141ASP for the period March 1, 2014 to March 1, 2015. The Fiduciary Liability Coverage Part provides limits of $2 million per Claim and in the aggregate subject. A copy of the Policy is attached as Exhibit C.

49.     The applicable Insuring Agreement provides:

   A.     APPLICABLE TO THE MANAGEMENT LIABILITY COVERAGE PARTS

   With regard to each and every Management Liability Coverage Part purchased, the Insurer will pay on behalf of the **Insured** all **Loss** as a result of any **Claim** that:

        1.       Is first made against such **Insured** during the **Policy Period**; and

        2.       Alleges any **Wrongful Act** that is committed prior to the end of the **Policy Period**.

50.     The Policy provides the following applicable definitions:

    10.    **Claim** means:

        a.    (i)    A written demand for monetary, non-monetary or injunctive relief;

                (ii)   A civil…proceeding…that is commenced by the filing or service, whichever is earlier, of a complaint…or similar document…

    26.    **ESOP** means an employee stock ownership plan.

                  \* \* \*

46.    **Loss**[2] means the amount that the **Insured** becomes legally obligated to pay as a result of a **Claim**. It includes, but is not limited to, **Defense Costs**, damages, settlements, judgments, pre-judgment interest and post-judgment interest.

        a.    **Loss** does not include any:

                  \* \* \*

                (ii)   Amount incurred by the **Company**…including any settlement, to comply with any non-monetary relief or any agreement to provide such relief;

                (iii)  Amount, including any settlement, uninsurable under the law pursuant to which this Policy is construed…

                (v)   Cost or expense incurred to perform any obligation assumed by, or on behalf of, or with the consent of any **Insured**…

        b.    **Loss**, other than **Loss** in the form of **Defense Costs**, does not include any:

                  \* \* \*

---

[2]  As amended by Endorsement No. 1.

(iv)   Amount that represents the return of any fee, charge, commission, gain or other compensation paid to an **Insured**…

(vii)  Amount that represents any cost of compliance with any order for, grant of or agreement to provide non-monetary or injunctive relief.

62.   **Plan** means any:

a.   (i)   **Sponsored Plan**; or

(ii)  Government-mandated insurance for workers' compensation, unemployment, social security or disability benefits for **Employees**; and

b.   That is insured under the Fiduciary Liability Coverage Part.

\* \* \*

72.   **Sponsored Plan** means any:

a.   Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each are defined in **ERISA**, that is operated:

(i)   Solely by the **Company**; or

(ii)  Jointly by the **Company** and a labor organization,

for the benefit of the **Employees** of the **Company**; or

b.   Other employment-benefit plan or program not subject to Title 1 of **ERISA** and sponsored solely by the **Company** for the benefit of the **Employees** of the **Company**.

**Sponsored Plan** does not include any **ESOP** created or acquired by the **Named Insured** after the inception date stated in Item 2 of the Declarations and does not include any multi-employer plan regardless of the date such plan was created.

51.   The Fiduciary Liability Coverage Part adds the following definitions:

Solely with regard to the coverage provided by this Fiduciary Liability Coverage Part, the General Terms & Conditions is amended as follows:

**II.   DEFINITIONS**

A.   The following definitions are added:

11

1.      **Administration** means the:

    a.      Giving advice to any **Employee** with regard to any **Plan**;

    b.      Providing any explanation with regard to any **Plan**; and

    c.      Handling of any record or effecting any enrollment, termination or cancellation of any **Employee** under any **Plan**…

B.      The definition of **Wrongful Act** is deleted in its entirety and replaced with the following:

**Wrongful Act** means, with regard to any **Plan** (whether such **Plan** is active or was terminated), any:

1.      Actual or alleged breach of any of the responsibilities, obligations or duties imposed upon **Sponsored Plan** fiduciaries by **ERISA**;

2.      Actual or alleged negligent act, error or omission in the **Administration** of any **Plan** committed or attempted by any Insured; or

3.      Any other matter alleged against such **Insured** solely by reason of such **Insured's** service as a **Sponsored Plan** fiduciary.

52.   The Policy includes the following applicable exclusions:

This Policy will not apply to any **Claim**:

A.      APPLICABLE TO ALL COVERAGE PARTS (UNLESS OTHERWISE NOTED)

* * *

4.      CONTRACT

For an **Insured's** liability under any contract or agreement, regardless of whether such liability is direct or assumed; provided, however, that:

    a.      This exclusion will not apply to:

        (i)      Liability that would attach to the **Insured** even in the absence of a contract or agreement…

12

7.      FRAUD

Based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any deliberate fraudulent act or omission or any deliberate violation of any statute or regulation committed by an **Insured**…

8.      ILLEGAL PROFIT

Based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any **Insured** or an **Outside Service Provider** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled…

53.     Endorsement No. 12 provides as follows:

Section III, Extensions, is deleted in its entirety and replaced with the following:

B.      CONDUCT EXCLUSIONS – SEVERABLE & SUBJECT TO FINAL ADJUDICATION

For the purpose of determining the applicability of the Fraud and Illegal Profit Exclusions (Section V, Exclusions, Clause A):

* * *

2.      The exclusions only apply if a final, non-appealable adjudication adverse to such **Insured**, whether or not such adjudication is made in the underlying **Claim** or in a separate proceeding, establishes that the:

a.      Deliberately fraudulent act or omission or willful violation was committed; or

b.      **Insured** did gain the illegal profit, remuneration or advantage;

whichever applies.

However, the phrase "in a separate proceeding" will not include any declaratory proceeding brought by or against the Insurer.

## COUNT I
## NO DUTY TO DEFEND OR INDEMNIFY THE INDIVIDUAL DEFENDANTS
## WITH RESPECT TO THE UNDERLYING LAWSUIT

54.     Torus repeats and realleges paragraphs 1 through 53 above as and for paragraph 54 of this Complaint for Declaratory Judgment.

55.     The Policy provides coverage for Loss as the result of a Claim first made against an Insured during the Policy Period for a Wrongful Act taking place prior to the end of the Policy Period.

56.     Wrongful Act means, with regard to any Plan, (1) any actual or alleged breach of any of the responsibilities, obligations or duties imposed upon Sponsored Plan fiduciaries by ERISA, (2) any actual or alleged negligent act, error or omission in the Administration of any Plan committed or attempted by any Insured, or (3) any other matter alleged against such Insured solely by reason of such Insured's service as a Sponsored Plan fiduciary.

57.     The definition of Sponsored Plan includes the ESOP.

58.     Administration means the giving of advice to any Employee with regard to any Plan, the provision of any explanation with regard to any Plan, and the handling of any record or effecting any enrollment, termination or cancellation of any Employee under any Plan.

59.     The Underlying Lawsuit does not seek to hold the Individual Defendants liable in their capacity as fiduciaries of the ESOP or as a result of their Administration of the ESOP, but rather, because they caused the ESOP Transaction to be carried out knowing the true value of MonaVie stock and because they knowingly participated in Bankers Trust's alleged breaches of its fiduciary duties to the ESOP in violation of ERISA. Therefore, the Policy is not implicated by, and does not provide coverage for, the allegations against the Individual Defendants.

60.     Pursuant to Exclusion A.7., the Policy precludes coverage for any Claim based upon, arising out of, resulting from, in consequence of or in any way involving any deliberate

fraudulent act or omission or any deliberate violation of any statute or regulation, to the extent a final, non-appealable adjudication establishes such act or omission or violation.

61.     The Underlying Lawsuit alleges that, despite being aware of the true value of MonaVie stock, caused the ESOP to purchase MonaVie shares at an inflated value in the ESOP Transaction. The Underlying Lawsuit also alleges that the Individual Defendants knowingly participated in Bankers Trust's alleged violations of ERISA.

62.     To the extent that the Individual Defendants are found to have committed any deliberate fraudulent act or omission or deliberate violation of ERISA, Exclusion A.7. would preclude coverage.

63.     Pursuant to Exclusion A.8., the Policy precludes coverage for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving an Insured gaining any profit, remuneration or financial advantage to which such Insured was not legally entitled, if there is a final, non-appealable adjudication adverse to such Insured establishing that the Insured did gain the illegal profit, remuneration or advantage.

64.     The Underlying Lawsuit alleges that the Individual Defendants, to the extent they were part of the group of shareholders who sold their MonaVie common stock in the ESOP Transaction, reaped millions from the ESOP Transaction.

65.     To the extent that the Individual Defendants are found to have gained a financial advantage to which they were not legally entitled, Exclusion A.8. would preclude coverage.

66.     The definition of Loss does not include any amount incurred by the Insureds to comply with any uninsurable amounts, any amount that represents the return of any fee, charge, commission, gain or other compensation paid to an Insured, or any amount that represents any

cost of compliance with any order for, grant of or agreement to provide non-monetary or injunctive relief.

67.     The Underlying Lawsuit seeks only equitable relief, including an accounting of profits, the imposition of a constructive trust and/or equitable lien on any funds wrongfully held by the Individual Defendants, an order enjoining the Individual Defendants from taking any further action with respect to the ESOP, disgorgement of all monies received by the Individual Defendants in connection with the ESOP Transaction and any profits made through the Individual Defendants' use of such monies.

68.     Therefore, the Policy would not provide coverage for any amounts awarded in the Underlying Lawsuit that do not constitute Loss as defined by the Policy.

69.     Pursuant to the "fortuity doctrine," an insured may not purchase coverage for known losses or a loss the insured knows or should know is in the process of occurring.

70.     The Underlying Lawsuit alleges that prior to entering into the ESOP Transaction, the Individual Defendants knew that the value of MonaVie stock was not worth the $186 million purchase price, and within 45 days of the transaction, the value of ESOP's MonaVie stock decreased by over $62 million.

71.     The ESOP Transaction was completed effective November 17, 2010, prior to the inception of the Policy.

72.     To the extent that any insured knew or should have known of a likely loss prior to the Policy's inception on March 1, 2014, the Policy does not provide coverage.

**COUNT II**
**NO DUTY TO DEFEND OR INDEMNIFY MONAVIE**
**WITH RESPECT TO THE BANKERS TRUST COMPLAINT**

73.     Torus repeats and realleges paragraphs 1 through 53 above as and for paragraph

73 of this Complaint for Declaratory Judgment.

74.     The Policy provides coverage for Loss as the result of a Claim first made against an Insured during the Policy Period for a Wrongful Act taking place prior to the end of the Policy Period.

75.     Wrongful Act means, with regard to any Plan, (1) any actual or alleged breach of any of the responsibilities, obligations or duties imposed upon Sponsored Plan fiduciaries by ERISA, (2) any actual or alleged negligent act, error or omission in the Administration of any Plan committed or attempted by any Insured, or (3) any other matter alleged against such Insured solely by reason of such Insured's service as a Sponsored Plan fiduciary.

76.     The definition of Sponsored Plan includes the ESOP.

77.     The Bankers Trust Complaint alleges that MonaVie is a "party in interest" as defined by ERISA. The Bankers Trust Complaint does not allege that MonaVie is a fiduciary of the ESOP or that MonaVie's participation in the ESOP Transaction was on behalf of the ESOP or in its capacity as a fiduciary of the ESOP.

78.     The Bankers Trust Complaint seeks to hold MonaVie liable to the extent that, as a party in interest, its separate violation of ERISA and its knowing participation in the ESOP Transaction and Bankers Trust's breaches of its fiduciary duties to the ESOP resulted in damages to the plaintiffs in the Underlying Lawsuit

79.     Administration means the giving of advice to any Employee with regard to any Plan, the provision of any explanation with regard to any Plan, and the handling of any record or effecting any enrollment, termination or cancellation of any Employee under any Plan.

80.     The Bankers Trust Complaint seeks damages as a result of MonaVie's failure to pay Bankers Trust's administrative costs and legal fees and costs associated with governmental

investigations and the Underlying Lawsuit. The Bankers Trust Complaint does not seek to hold MonaVie liable for the Administration of the ESOP.

81.     Pursuant to Exclusion B.4., the Policy does not apply to any Claim for an Insured's liability under any contract or agreement, regardless of whether such liability is direct or assumed.

82.     The Bankers Trust Complaint asserts numerous claims as a result of MonaVie's failure to indemnify Bankers Trust in breach of the Engagement Agreement.

83.     Exclusion B.4. precludes coverage for the claims for breach of contract and indemnification (Count I), breach of the covenant of good faith and fair dealing (Count II), and declaratory judgment (Count III) asserted by Bankers Trust and any damages resulting therefrom.

84.     The definition of Loss does not include any amount incurred by MonaVie to comply with any non-monetary relief or any agreement to provide such relief, uninsurable amounts, or the cost or expense incurred to perform any obligation assumed by, or on behalf of, or with the consent of any Insured, or any amount that represents the return of any fee, charge, commission, gain or other compensation paid to an Insured.

85.     The Policy would not provide coverage for any amounts awarded in the Underlying Lawsuit that do not constitute Loss as defined by the Policy.

86.     Pursuant to Exclusion A.8., the Policy precludes coverage for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving an Insured gaining any profit, remuneration or financial advantage to which such Insured was not legally entitled, if there is a final, non-appealable adjudication adverse to such Insured establishing that the Insured did gain the illegal profit, remuneration or advantage.

87.     The Bankers Trust Complaint alleges that MonaVie has denied Bankers Trust of the benefit of the agreements between the parties. Consequently, MonaVie has allegedly benefited at the expense of Bankers Trust.

88.     To the extent that MonaVie is found to have gained a financial advantage to which it were not legally entitled, Exclusion A.8. would preclude coverage.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Torus National Insurance Company, respectfully requests that this Honorable Court enter judgment in its favor and against the Defendants as follows:

a.     Declaring that the Policy does not provide coverage to Dallin Larsen, Randy Larsen and Henry Marsh for the Underlying Lawsuit, and therefore, Torus National Insurance Company has no duty to defend or indemnify Dallin Larsen, Randy Larsen and Henry Marsh, with respect to the Underlying Lawsuit, under policy number 44363C141ASP.

b.     Declaring that the Policy does not provide coverage to MonaVie, Inc. for the Bankers Trust Complaint, and therefore, Torus National Insurance Company has no duty to defend or indemnify MonaVie, Inc. with respect to the Underlying Lawsuit, under policy number 44363C141ASP.

c.     Awarding Torus National Insurance Company such further relief as is just and proper.

Dated this 20th day of January, 2016.

**FABIAN VANCOTT**

By:  /s/  Scott M. Lilja
      Scott M. Lilja

215 South State Street, Suite 1200
Salt Lake City, UT 84111
Tel.:  (801) 531-8900
Fax:  (801) 596-2814
Email:  slilja@fabianvancott.com

**COZEN O'CONNOR**


By:   /s/  Gary L. Gassman
        Gary L. Gassman[3]

**Cozen O'Connor**
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel.:  (312) 474-7900
Fax:  (312) 474-7898
Email:  ggassman@cozen.com


4814-8807-1724, v.  1

---

[3] A motion for pro hac vice admission will be filed concurrently with this Complaint for Declaratory Judgment.